

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JB/AB:CMP
F. #2009R02328

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 10, 2010

VIA ECF AND HAND DELIVERY

The Honorable William A. Webb
United States Magistrate Judge
United States District Court
Eastern District of North Carolina
310 New Bern Avenue
Raleigh, North Carolina 27601

        Re:  United States v. Gaetano Napoli, et al.
             Criminal Docket No. 10-150 (JG)

Dear Judge Webb:

      On March 4, 2010, a Grand Jury in the Eastern District of New York returned a nine-count indictment against defendants Gaetano Napoli, also known as "Gaetano Napoli, Sr." and "Thomas Napoli," Thomas Napoli, also known as "Thomas Napoli, Jr.," and Gaetano Napoli Jr., also known as "Guy." The case has been assigned to the Honorable John Gleeson. Defendant Thomas Napoli was arrested in the Eastern District of New York earlier this morning and is scheduled to be arraigned before that Court today; the remaining defendants were arrested earlier this morning in this District and we understand they will be arraigned in the United States District Court for the Eastern District of North Carolina tomorrow. The government respectfully submits this letter to provide the Court with factual information to assist in the Court's determination of detention or bail as to the defendants. The government respectfully submits that Gaetano Napoli, Sr. poses a danger to the community and therefore a permanent order of detention and removal in custody to the Eastern District of New York are warranted.[1]

      Listed in the chart on the following page is a summary of the criminal counts included in this indictment:

---

    [1]    The government makes this submission without prejudice to seek detention of the other defendants.

| Counts | Description | Defendants |
|---|---|---|
| 1 | False Statements in Bankruptcy - Bankruptcy Petition | Gaetano Napoli, Sr. |
| 2 | False Statements in Bankruptcy - Section 341(a) Meeting | Gaetano Napoli, Sr. |
| 3 | Concealment of Assets in Bankruptcy | Gaetano Napoli, Sr., Thomas Napoli, Gaetano Napoli, Jr. |
| 4 | Conspiracy to Conceal Assets in Bankruptcy | Gaetano Napoli, Sr., Thomas Napoli, Gaetano Napoli, Jr. |
| 5 | Extortionate Collection of Credit - John Doe | Gaetano Napoli, Sr. |
| 6 | Obstruction of Justice - Witness #1 | Gaetano Napoli, Sr. |
| 7 | Obstruction of Justice - Grand Jury Proceeding | Gaetano Napoli, Sr. |
| 8 | Obstruction of Justice - Witness #2 | Gaetano Napoli, Sr., Gaetano Napoli, Jr. |
| 9 | Conspiracy to Obstruct Justice - Witness #2 | Gaetano Napoli, Sr., Gaetano Napoli, Jr. |

Factual Proffer

The government proffers the following facts concerning the charges at issue and pretrial detention. See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (the government is entitled to proceed by proffer in a detention hearing); United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995) (same); United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986) (same). These facts are relevant to the four factors to be considered in the detention analysis under the Bail Reform Act: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release; and (4) the evidence of the defendant's guilt. See 18 U.S.C. § 3142(g).

2

I.  History and Characteristics of the Defendant:
    Gaetano Napoli, Sr. and the Gambino Crime Family

Information obtained from multiple confidential sources, who have been corroborated in the past through consensual recordings, cooperating witnesses, surveillance and other sources of information, indicates that Gaetano Napoli, Sr. ("Napoli") is an inducted member of the Gambino crime family who currently reports to Gambino captain Louis Mastrangelo and previously reported to Dominick Pizzonia, prior to Pizzonia's recent incarceration.[2] The government obtained court-authorized wiretaps on various telephones used by Napoli and his son and co-defendant, Thomas Napoli, from approximately May 2009 through October 2009.[3] The interceptions obtained pursuant to those court orders and related surveillance confirmed Napoli's active ties to organized crime. Among other things, Napoli was observed meeting with Mastrangelo and Dominick Pizzonia's son, and was intercepted receiving instructions from Dominick Pizzonia by way of Pizzonia's girlfriend. Napoli was also intercepted having

---

[2]  On September 27, 2007, Dominick Pizzonia was sentenced to 15 years' imprisonment following his conviction on RICO conspiracy charges, including predicate acts of conspiracy to murder and illegal gambling, relating to his membership in the Gambino family.

[3]  The government intends to rely on Title III interceptions as part of its request for detention of Gaetano Napoli. The government submits that the requirement of prior service of electronic surveillance orders and applications found at 18 U.S.C. § 2518(9) is inapplicable because, as provided in Section 2518(9), it was clearly not possibly to furnish the applications and orders prior to the defendants' arrest and because the delay in service creates no prejudice to defendants' ability to subsequently seek pre-trial suppression of the fruits of the electronic surveillance. See, e.g., United States v. Tortoro, 922 F.2d 880, 886 (1st Cir. 1990) (although "the admissibility of the recordings may be an issue at trial, that circumstance does not preclude their use at a bail hearing"). See also United States v. Melendez-Carrion, 790 F.2d 984 (2d Cir. 1986) (upholding district court's waiver of ten-day requirement where it was not possible to furnish the required documents timely, no prejudice would result, and all defendants were able to move to suppress results of the electronic surveillance).

3

heated discussions about money with Onofrio Macchio, an inducted member of the Genovese crime family.[4]

Significantly, during the course of the electronic surveillance, Napoli also communicated extensively with Roberto Settineri, an Italian citizen living in the Miami area whom Italian authorities have identified as an active participant in the Sicilian mafia. This morning, Settineri was arrested on charges of money laundering and obstruction of justice in the Southern District of Florida. Also today, Italian authorities charged Settineri and numerous others variously with the crimes of mafia association, extortion, drug trafficking, attempted homicide and other serious crimes arising from their affiliation with *Santa Maria di Gesù*, a Siclian mafia family based in Palermo. Italian authorities executed 20 arrests this morning as part of this investigation.

Information obtained in the course of the Title III interception demonstrates Napoli's close relationship with Settineri and their involvement with the Gambino and Colombo crime families. In June 2009, Settineri and one of his associates were involved in a dispute with Colombo family members in the Miami area. Settineri asked Napoli to represent him at a meeting, or "sit-down," about the dispute in Florida; after Settineri described the individual involved in the dispute, Napoli stated, "Now I understand, yeah, okay, okay. All right, the Colombo," to which Settineri responded, "Exactly."[5] They further discussed the nature of Napoli's representation of Settineri:

> G. NAPOLI: If it's necessary, in other words. Let's see what he says, and so on, and if he wants something ... a ... representative, let's put it this way, do you understand?

---

[4] This description of Macchio is based on source information that has been corroborated by, among other things, documentary evidence, including a "proposal list" circulated by the Genovese crime family to another La Cosa Nostra family, proposing Macchio to be inducted as a member of the Genovese family. This proposal list was recovered by law enforcement.

[5] This and other conversations with Settineri were conducted in Italian and the quotes cited herein are based on draft transcripts subject to revision.

4

| | | |
|---|---|---|
| SETTINERI: | | Yeah, yeah. |
| G. NAPOLI: | | I'll talk to whomever I have to talk to. [...] |
| G. NAPOLI: | | And if it's necessary, if they tell you OK, then I'll come, understand? |
| SETTINERI: | | I understand. All right. |

Later in this conversation, Settineri explained that although the Colombo member "knows how I'm set up," he still wanted Napoli's representation in order to "show everybody good manners." In saying "how I'm set up," Settineri used a colloquial Italian phrase – "*come sono combinato*" – which, in context, describes Settineri's affiliation with Sicilian organized crime. Settineri's reference to "manners" in context references the custom of organized crime associates being represented by inducted organized crime family members at sit-downs, which demonstrates that Napoli is a member of the Gambino family – i.e., because Settineri was meeting with an inducted Colombo member, he required the representation of an inducted Gambino family member. The day after this call, Napoli was observed meeting in Brooklyn with the Colombo family member referenced in this conversation and with another Colombo associate.

In conversations preparing for the Florida meeting, Napoli frequently warned Settineri during these calls to be "100 percent" sure about his associate and to beware of "*sbirri*," Italian slang that means "cops" or, in this context, may refer to informants. Surveillance conducted in Florida on July 1, 2009 confirmed that Napoli, Settineri, the Colombo family member and others met at a social club in Pompano Beach, Florida. Later the same day, Napoli discussed the outcome of the meeting with Gaetano Napoli, Jr.:

| | | |
|---|---|---|
| G. NAPOLI, SR: | | Yeah, everything is OK here. |
| G. NAPOLI, JR: | | Oh, good – youse worked out? |
| G. NAPOLI, SR: | | Huh, we won that situation with this guy and the other situation so far 50-50. If everything goes well it will be 100 percent. You know what I'm talking about, right? |
| G. NAPOLI, JR: | | Yeah. |

5

This evidence demonstrates Napoli's influence within the Gambino crime family, such that he successfully negotiated a resolution to the Settineri-Colombo dispute. Such influence could easily be used intimidate witnesses and otherwise obstruct justice, as described below.

II. Nature and Circumstances of Crimes Charged and the Evidence of the Defendant's Guilt

   A. Obstruction of Justice

Napoli is charged with, inter alia, two counts of obstruction of the grand jury investigation in this case (Counts Six and Seven of the indictment). In the fall of 2009, the government served several witnesses with grand jury subpoenas to seek testimony regarding Napoli's concealment of assets in bankruptcy (described below). Following the service of a subpoena on "Witness #1," as identified in the indictment, Witness #1 contacted Napoli to discuss the visit by the FBI agents who served the subpoena. Napoli asked, "To talk about what?", to which Witness #1 responded, "I don't know, I didn't answer their questions." Soon after this conversation, Napoli called an unindicted coconspirator in the concealment of assets conspiracy (identified as "Witness #2" in the indictment), who advised Napoli, "We got a problem on our hands here and we need to get her a lawyer, and have the FBI go back out and interview her. I don't want her to go into the Grand Jury." Napoli agreed and, in another call, told Witness #2, "The lawyer can then school [Witness #1] on what to say and what not to say because [Witness #1] is a little bit light-headed." In a consensually-recorded conversation on October 12, 2009, after Witness #2 had begun cooperating with law enforcement, Napoli told Witness #2 that Witness #1 had been "schooled ... on what to do and what not to do."

In the same conversation, Napoli and Gaetano Napoli, Jr. directed Witness #2 to refrain from speaking to law enforcement and coached Witness #2 on how to respond should Witness #2 be contacted by law enforcement. After telling Witness #2, "I hope I don't have to worry about you," Napoli stated:

> Do not volunteer to nobody nothing ... Anybody calls, what's up? Goodbye? Tell Tommy ... Do not speak to them. One fuckin' word out of the way and we're all shit-fucked.

6

B.  Concealment of Assets in Bankruptcy

In addition to these efforts to influence and corruptly persuade two witnesses, Napoli's misrepresentations to the Bankruptcy Court, which form the basis of Counts One through Four of the Indictment, also demonstrate his willingness to engage in obstructive conduct – even going so far as to make false statements under oath – when it is in his interest to do so. As charged in Count One, Napoli knowingly made false statements in Napoli & Sons' 2009 bankruptcy petition, which he signed under penalty of perjury, by denying that Napoli & Sons had any assets whatsoever. Furthermore, as charged in Count Two, he took an oath to tell the truth during a meeting with the Bankruptcy Trustee pursuant to Section 341(a) of the Bankruptcy Code but nonetheless deliberately misrepresented Napoli & Sons' assets. For example, when asked if the debtor had equipment, Napoli responded, "Yeah. They're leased actually. All the equipments are leased."

In fact, far from "leasing" the equipment, Napoli sold some of it for approximately $100,000 not long after the 341(a) meeting and rented additional equipment to a third party for, among other reasons, the purpose of fraudulently conveying assets. Napoli and his sons were intercepted arranging a moving truck to transport the Napoli & Sons equipment, such as a 500 lb meat grinder, fork lifts and other industrial-sized meat-packing equipment, to the buyer, and agents conducting surveillance also photographed and videotaped the movers in action. Additionally, in the bankruptcy petition, Napoli denied having any accounts receivable; consequently, he and Gaetano Napoli, Jr. instructed customers to write checks in the name "G&T Meatpackers" instead of Napoli & Sons to conceal these accounts receivable and payments from the Bankruptcy Court.

C.  Extortionate Collection of Credit

Napoli is also charged with extortionate collection of credit in violation of Title 18, United States Code, Section 894, which is a crime of violence as defined under Title 18, United States Code, Section 3156(a)(4).[6] This charge is based on

---

[6] Section 3156(a)(4) defines a "crime of violence" as: "(A) an offense that has [as] an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another; (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be

7

Napoli's efforts to collect approximately $30,000 in gambling debt from the individual identified as "John Doe" in the indictment. Napoli was intercepted having several threatening communications about this debt with John Doe and John Doe's brother-in-law. For example, Napoli left the following message for the brother-in-law on July 17, 2009:

> Yeah ... this is Mr. Napoli. I guess, in other words, you and your brother-in-law feel like you can just fuck me, alright? OK? No return calls, nothing. I help both of youse and him and everything -- and now youse fuck me, OK? That's all I could tell youse, alright? Tell this message to your brother-in-law. Alright? Goodbye.

Immediately thereafter, Napoli called John Doe and left the following voice mail message:

> Monday night, that's it. You or your brother-in-law better fucking call me Monday ... I'm giving you an extension which I shouldn't even give ... don't make me come around and look for you.

Finally, on July 21, 2009 - the day after John Doe's brother-in-law was observed visiting Napoli & Sons - Gaetano Napoli and Thomas Napoli discussed the delivery of 30 "chairs." Under the circumstances and the repeated references to $30,000 in prior calls, "chairs" was almost certainly code for the payment of $30,000 owed by John Doe.

### III. The Evidence of the Defendant's Guilt

As described in the factual proffer above, the government's evidence of Napoli's and his co-defendants' guilt is overwhelming. In addition to electronic surveillance, the government has also conducted extensive physical surveillance, which has resulted in photographs and video of the defendants physically moving Napoli & Sons' assets to another location to conceal them from the Bankruptcy Trustee. The government has also obtained incriminating business documents, including the $100,000 contract of sale for the Napoli & Sons equipment that was concealed from the Bankruptcy Court. In addition, the consensual recordings made by Witness #2 include Napoli's

---

used in the course of committing the offense."

8

admissions regarding the concealment of assets, false statments and direct evidence of his obstruction of justice.

## Analysis

Under the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., federal courts must order a defendant's pre-trial detention upon determining that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence. See United States v. Rodriquez, 950 F.2d 85, 88 (2d Cir. 1991); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985). A finding of risk of flight must be supported by a preponderance of the evidence. See Chimurenga, 760 F.2d at 405.

As described above, Napoli's obstructive conduct alone poses a serious danger to the community, even leaving aside his sworn loyalty to a violent criminal enterprise, the Gambino crime family. See 18 U.S.C. § 3142(f)(2) (the Court may require a detention hearing if there is a serious risk that the defendants will flee or "obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure or intimidate, a prospective witness."). In United States v. LaFontaine, 210 F.3d 125 (2d Cir. 2000), the district court revoked the defendant's bail based on evidence that she had sought to influence witnesses. The defendant, who was charged with non-violent crimes such as mail fraud, health care fraud and witness tampering, appealed, arguing that elaborate release conditions, including relocation to a different state, would assure the safety of the community. Id. at 135. The Second Circuit rejected this argument, finding that although "LaFontaine is a white-collar criminal with no connection to the mob ... [and] the evidence of tampering does not include either actual violence or threats of violence against any trial witnesses," detention was still appropriate: "First, we have held that a record of violence or dangerousness in that sense is not necessary to support pretrial detention. Second, obstruction of justice has been a traditional ground for pretrial detention by the courts..." Id. at 134 (internal citations omitted). Moreover, the Court noted that in United States v. Gotti, 794 F.2d 773, 779 & n.9 (2d Cir. 1991), even a "single incident of witness tampering constituted a 'threat to the integrity of the trial process...' and was sufficient to revoke bail." LaFontaine, 210 F.3d at 134 (quoting Gotti, 794 F.2d at 779 n.5).

9

Napoli, as in Gotti, is a member of the Gambino crime family and, as described above, has engaged in several obstructions of this investigation, further demonstrating the appropriateness of pretrial detention in this case. The Second Circuit has repeatedly held that even elaborate conditions of home detention cannot substitute for incarceration where the defendant is violent or cannot be trusted to comply with the conditions of release, particularly in organized crime cases. In United States v. Dono, Nos. 07-5333-cr(L), 07-5334-cr(CON), 2008 WL 1813237 (2d Cir. April 23, 2008), the Second Circuit overturned Judge Weinstein's decision to authorize pre-trial release for Colombo crime family members and associates, finding that the conditions imposed by the District Court – including bonds for the two defendants in the amounts of $2 million and $3 million, home detention, electronic monitoring, wiretapping family members' phones and a prohibition on contact with organized crime family members – were still insufficient to ensure the defendants' compliance with the terms of their pretrial release. The Court found that in light of the defendants' violent criminal acts and their intimidation of victims and witnesses, "the idea that 'specified conditions of bail protect the public more than detention is flawed' because, among other reasons, '[t]hese conditions would at best elaborately replicate a detention facility without the confidence of security such a facility instills.'" Id. (quoting United States v. Orena, 986 F.2d 628, 632 (2d Cir. 1993)).

As in Dono, electronic monitoring of Napoli could not prevent him from directing others to influence or even intimidate victims and witnesses. Given Napoli's history of obstructive conduct, his violent threats and his participation in organized crime, there is no condition or combination of conditions that would "reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(e).

10

## Conclusion

For the reasons cited above, the government respectfully requests that the Court enter a permanent order of detention with respect to defendant Gaetano Napoli.

Respectfully submitted,

BENTON J. CAMPBELL
United States Attorney

By: __/s/ Cristina Posa__
Cristina Posa
Amy Busa
Assistant U.S. Attorney
(718) 254-6668/6274

cc: United States Magistrate Judge Steven M. Gold, E.D.N.Y.